# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:18-cv-13-RJC
## (5:13-cr-80-RJC-DSC-1)

| | | |
|---|---|---|
| **DARIUS DONNELL FREEMAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.    BACKGROUND

Petitioner was charged in the underlying criminal case with: Count (1), armed bank robbery and aiding and abetting; Count (2), using, carrying, and brandishing a firearm in relation to a crime of violence (Count (1)); Count (3), carjacking; and Count (4), using, carrying, and brandishing a firearm in relation to a crime of violence (Count (3)). (5:13-cr-83, Doc. No. 1).

Petitioner moved to suppress the photo lineup identification of him by carjacking victim Princess Wilson because the identification procedure was unnecessarily suggestive. (5:13-cr-83, Doc. No. 28). At the suppression hearing, Detectives Justin Todd, Todd Stutts, Michael Peacock, and Corey Richard, testified that they did not show Wilson images of the bank robbery suspects before Wilson viewed a photo lineup of the carjacking suspects. However, Detective Todd admitted that he received an email from Detective Stutts several days before the photo identification stating: "I talked to Ms. Wilson today. She states that she has viewed the bank

1

robbery pictures and is 100% positive the suspect with the bandage on his face is the one that carjacked her…." (5:13-cr-80, Doc. No. 64 at 34). Wilson testified at the suppression hearing that she had not seen any images of the bank robbery suspects, either through police or the media, before she viewed the photo lineup and identified Petitioner as the person who carjacked her. (5:13-cr-80, Doc. No. 64 at 56). The Court denied Petitioner's motion to suppress because it found by a preponderance of the evidence that the photo identification procedure was not unnecessarily suggestive, stating "there was no evidence that law enforcement presented her with the bank robbery photos before the lineup was conducted … and consequently, there was not a taint and the matter of identification then becomes a matter for the trial and cross-examination." (5:13-cr-80, Doc. No. 64 at 83).

At trial, defense counsel questioned Detectives Stutts about the email memorializing his conversation with Wilson in which she reported having seen images of the robbers before the photo identification. (5:13-cr-80, Doc. No. 67 at 120-21). In closing argument, defense counsel noted that there was evidence that Wilson told Detective Stutts she had seen images of the bank robbers prior to the photo identification then denied it at trial, and "something … doesn't add up in [Wilson's] testimony." (5:13-cr-80, Doc. No. 68 at 28).

The jury found Petitioner guilty of all four counts and he was sentenced to a total of 447 months' imprisonment. (5:13-cr-80, Doc. No. 47, 80).

One of Petitioner's claims on direct appeal was that the Court erred in denying his motion to suppress because the photographic lineup was unduly suggestive. The Fourth Circuit found that no clear error had occurred:

> During the suppression hearing, [Wilson] testified that she did not see photographs of the bank robbery until after the photo lineup. But a few days before the photo lineup, a detective who had spoken with the victim on the telephone sent an email to another detective saying that '[the victim] states that she has viewed the

> bank robbery pictures and is 100% positive [one of the robbers] is the one that carjacked her.' … Freeman argues that the victim's testimony is contradicted by the email. But even allowing this point, there is no evidence that police showed the victim the robbery pictures. These photos had been displayed by local news media, and all four of the police officers who testified at the suppression hearing swore that they did not show the victim any bank robbery pictures before the photo lineup. Therefore, we conclude that the district court did not clearly err in finding the identification was not impermissibly tainted, and did not err in denying Freeman's motion to suppress.

United States v. Freeman, 680 Fed. Appx. 181, 183 (4th Cir. 2017).

The Fourth Circuit also rejected Petitioner's other claims and affirmed the conviction and sentence on February 24, 2017. Id.

Petitioner filed the instant § 2255 Motion to Vacate on January 4, 2018. He argues that counsel was ineffective for failing to object to Wilson's false testimony at the suppression hearing and at trial that she had not seen photographs of the bank robbery suspects prior to the photo lineup identification, which was contradicted by the email between Detectives Stutts and Todd. The prosecutor knew or should have known that the testimony was false and chose not to correct it. Had Ms. Wilson informed the Court that she indeed viewed the bank robbery suspects before the photo lineup, the court would have had no choice but to disqualify Ms. Wilson's identification of the Petitioner. He argues that, but for counsel's deficient performance, there is more than a probability of a different trial outcome

## II.    STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. <u>See</u> U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." <u>Id.</u> at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." <u>Harrington v. Richter</u>, 562 U.S. 86, 104 (2011) (quoting <u>Strickland</u>, 466 U.S. at 689). The <u>Strickland</u> standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." <u>See</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. <u>See</u> <u>Strickland</u>, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . <u>Strickland</u> if the 'result of the proceeding was fundamentally unfair or unreliable.'" <u>Sexton v. French</u>, 163 F.3d 874, 882 (4th Cir. 1998) (quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." <u>Bowie v. Branker</u>, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." <u>United States v. Rhynes</u>, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

Petitioner's claim that counsel was ineffective with regards to the suppression motion is barred. It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). Under the law of the case doctrine, once the decision of an appellate court establishes law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work a manifest injustice." United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999) (quoting Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988)); see United States v. Francis, 62 Fed. Appx. 507 (4th Cir. 2003)

(applying law of the case doctrine to bar the relitigation on § 2255 review of issues previously litigated on direct appeal).[1]

Petitioner argued on direct appeal that the Court erred in denying his Motion to Suppress and finding that police did not show the victim any bank robbery photographs before conducting the photo lineup. Petitioner's attempt to re-cast his attack on the Court's suppression ruling as a claim of ineffective assistance of counsel is rejected. See, e.g., Stitt v. United States, 369 F.Supp.2d 679 (E.D. Va. 2005) (Fourth Circuit's finding on direct appeal that the court was not constitutionally required to give jury instruction barred petitioner from arguing on § 2255 review that counsel was ineffective for failing to request that instruction); Higgs v. United States, 711 F.Supp.2d 479 (D. Md. 2010) (Fourth Circuit's ruling in the context of a Brady[2] violation that the absence of a witness from trial and failure to provide notes pertaining to that witness had no prejudicial effect on the outcome of the case and that there was strong evidence to support the conviction and sentence even if the statement at issue had been introduced into evidence, barred petitioner from arguing on § 2255 motion that counsel was ineffective for failing to call that witness at trial). Cf. United States v. Randall, 564 Fed. Appx. 701 (4th Cir. 2014) (finding that petitioner's argument on direct appeal that his guilty plea was knowing and voluntary did not bar his § 2255 claim that counsel was ineffective in advising him regarding two plea offers and rejected the first offer and accepted the second based on that misadvice, where the Fourth Circuit declined on direct appeal to consider any evidence of counsel's ineffectiveness that was not in the record

---

[1] Unpublished opinions are not ordinarily accorded precedential value, and are "entitled only to the weight they generate by the persuasiveness of their reasoning." Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (citation omitted)).

[2] Brady v. Maryland, 373 U.S. 83 (1963).

and invited petitioner to file a § 2255 motion if he wished to make out an ineffective assistance claim).

Second, Petitioner's claim that counsel failed to raise Wilson's allegedly false testimony at the suppression hearing and trial is conclusively refuted by the record. Evidence of the email between Detectives Stutts and Todd stating that Wilson admitted having seen images of the bank robbers before the photo identification, was introduced at the suppression hearing and at trial. Counsel argued that the inconsistency warranted suppression of Wilson's photo identification, and that it rendered Wilson's trial testimony incredible. Petitioner fails to explain what more counsel could have done at either the suppression hearing or at trial that would have probably resulted in a different outcome. His claim that counsel was ineffective for failing to challenge Wilson's credibility at the suppression hearing and at trial is therefore denied on the merits.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is

denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: May 16, 2018

Robert J. Conrad, Jr.
United States District Judge